NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

EDISON MOTOR SALES, LLC, d/b/a : 
EDISON NISSAN, :
 :
      Plaintiff, :     Hon. Dennis M. Cavanaugh
 :
    v. :     **OPINION**
 :
DIBRE AUTO GROUP, LLC, d/b/a :     Civil Action No: 2:12-cv-239 (DMC)(MF)
NORTH PLAINFIELD NISSAN, ALAIN :
DIBRE, PATRICK DIBRE, and LUXURY :
FLEET SERVICES, LLC, :
 :
      Defendants. :

---

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon Motion of Defendants Dibre Auto Group, LLC, d/b/a North Plainfield Nissan, Alain Dibre, Patrick Dibre, and Luxury Fleet Services, LLC ("Defendants") to Dismiss Plaintiff Edison Nissan's ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). (Mar. 13, 2012, ECF No. 26). Pursuant to FED. R. CIV. P 78, no oral argument was heard. After carefully having considered the submissions of the parties, and for the reasons stated herein, Defendants' Motion to Dismiss is **denied**.

I. **BACKGROUND**[1]

      Plaintiff's Verified Complaint states that in the summer of 2010, Nissan North

---

[1] The facts in the Background section have been taken from the Verified Complaint ("Compl."). (ECF No. 1). On this motion to dismiss, the Court will accept the factual allegations in the Verified Complaint as true and construe all facts in Plaintiff's favor.

1

America, Inc., ("NNA") decided to establish a dealership in Edison, New Jersey. NNA invited several potential owners from a number of local Nissan dealerships, including Plaintiff, Pine Belt Nissan of Keyport, Acme Nissan, Sansone's Route 1 Nissan, Somerset Nissan, and Defendant North Plainfield Nissan, to apply to become the owner/operator of this dealership. On June 14, 2011, NNA informed the applicants, including the Defendants, that the dealership had been awarded to Plaintiff. Plaintiff adopted the trade name "Edison Nissan," which demonstrates the customary industry practice of combining geographic terms with motor vehicle manufacturer trademarks to form dealer trade names. Plaintiff registered "Edison Nissan" as an alternate name with the State of New Jersey on March 31, 2011, and "Nissan of Edison" as an alternate name on November 4, 2011.

Edison Nissan used "Edison Nissan" as a trade name[2] as early as May 12, 2011, and has used "Edison Nissan" as a service mark[3] associated with its auto dealership services since November 1, 2011. The Dealer Agreement between NNA and Plaintiff provides the following:

> (i) grants (Plaintiff) the right "to use the Nissan marks in the advertising, promotion and sale of Nissan products;
> (ii) identifies the dealer entity, Edison Motor Sales, LLC, as "doing business as Edison Nissan,";
> (iii) only allows use of "Nissan" with the other words in its trade name or domain name, namely, "Edison"; and
> (iv) requires registration of domain names that correspond to words in its trade name, namely, Edison Nissan or Nissan of Edison.

---

[2] A trade name is " a word, name, symbol, device or other designation, or a combination of such designations, that is distinctive of a person's business...and that is used in a manner that identifies that business... and distinguishes from businesses...of others." <u>Restatement Third, Unfair Competition</u> § 12 (1995).

[3] The Lanham Act defines service mark as any word, name, and/or symbol, used by a person to identify and distinguish services from the services of others and to indicate the source of the services. Lanham Act § 45, 15 U.S.C. § 1127.

Plaintiff asserts that the trademark rights granted to Edison Nissan by the Dealer Agreement to the trade name "Edison Nissan" and its use in a domain name precludes the use of "Edison Nissan" or the variant "Nissan of Edison" as a trade name or domain name by other Nissan dealers, including Defendants.

The Verified Complaint further states that on October 1, 2010, Defendant Luxury Fleet Services, Inc. purchased and registered the domain name "nissanofedison.com" in connection with the Dibres' application to acquire the new dealership. On October 19, 2010, Defendant Alain Dibre purchased and registered the domain name "edisonnissan.com" in connection with the application to obtain the new dealership. Plaintiff alleges that Defendants divert prospective customers to their website via the domain names "edisonnissan.com" and "nissanofedison.com," and unfairly create the likelihood of confusion and mistake with Plaintiff's trade name and service mark, "Edison Nissan." Plaintiff further asserts that given Defendants' knowledge of the policy and purpose governing the use of geographic terms in Nissan dealer trade names and domain names, Defendants' use of the domain names is in bad faith and in retaliation for not having been awarded the dealership. Defendants allegedly began using the domain names on or about the time of Plaintiff's opening on November 1, 2011.

Plaintiff states that it has made substantial expenditures to start business operations, and has also made expenditures for promotion and advertising of its business and services on the Internet, television, print, and other media. These efforts highlight Plaintiff's attempt to establish its reputation and good will surrounding its mark.

Plaintiff's counsel demanded the immediate cessation of the use of the domain names by a letter dated November 4, 2011, and an e-mail dated November 8, 2011. Defendants' counsel

responded to Plaintiff by letters dated November 8, 2011 and November 10, 2011, stating that Defendants would continue to use the domain names. Defendants' attorney asserted that the original purpose of the domain names was to support their application for the dealership. Defendants' counsel also admitted that Defendants have used the domain names to direct business to the North Plainfield dealership.

The Verified Complaint asserts four claims against Defendants. First, Plaintiff claims that Defendants' registration of the domain names constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). In the Second Count, Plaintiff alleges that Defendants' registration of the domain names constitutes a violation of New Jersey Fair Trade Act, N.J.S.A. 56:4-1; 56:3-13.16(a); and 56:3-13.20. In the Third Count, Plaintiff alleges that Defendants' registration of the domain names and use and trafficking in the infringing domain names constitutes a violation of Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d). In the Fourth Count of the Verified Complaint, Plaintiff alleges that Defendants' registration and use of the domain names has resulted in unjust enrichment to the Defendants. Plaintiff claims that Defendants' use of the domain names, has caused Plaintiff to incur damages to its business, reputation, and good will, and will confuse or deceive consumers regarding the business and source of the services.

Defendants filed the present Motion to Dismiss in response to Plaintiff's Verified Complaint on March 31, 2012. (Def. Br. in Support, ECF No. 26). Plaintiff submitted their Opposition on April 2, 2012. (Pl. Opp'n. Br., ECF No. 27). Defendants filed a Reply on April 9, 2012. (Reply Br., ECF No. 28). The matter is now before this Court.

## II. STANDARDS OF REVIEW

**A. Fed.R.Civ.P. 12(b)(6)**

In deciding a motion under FED. R. CIV. P. 12(b)(6), the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Id. On a motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Plaintiff's complaint is subject to the heightened pleading standard set forth in Ashcroft v. Iqbal:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009) (quoting Twombly, 550 U.S. at 557, 750).

**B. LANHAM ACT 15 U.S.C. §1125**

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) states:

(a) Civil action
   **(1)** Any person who, on or in connection with any goods or services, or any container for

5

goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Federal trademark infringement claims are brought under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). New Jersey's unfair competition statute tracks the language of, 15 U.S.C. §1125(a) and therefore courts focus upon the language of the federal statute when evaluating state law trademark infringement claims. Mercedes-Benz USA, LLC, v. ATX Group, Inc.,Civ. No. 08-3529, 2009 WL 2255727 at 9 (D.N.J. July 27, 2009).

To prove a Lanham Act violation, a plaintiff must allege the following:

> (1) that the defendant has made false or misleading statements as to his own product [or another's];
>
> (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;
>
> (3) that the deception is material in that it is likely to influence purchasing decisions;
>
> (4) that the advertised goods traveled in interstate commerce; and
>
> (5) that there is a likelihood of injury to the plaintiff in terms of good will, etc.

Pharmacia Corp., et al., v. GlaxoSmithKline Consumer Healthcare L.P., et al., 292 F.Supp.2d 594, 598 (D.N.J. 2003).

The Lanham Act §43(a), 15 U.S.C. §1125(a) "creates a cause of action for any false description or representation of a product." Eli Lilly & Co. v. Roussel Corp., 23 F.Supp.2d 460, 475 (D.N.J.1998), (citing U.S. Healthcare v. Blue Cross of Greater Philadelphia., 898 F.2d 914, 921 (3d Cir. 1990)). The Lanham Act requires "neither proof of literal or obvious falsehood, nor intent to deceive." Eli Lilly and Co., 23 F.Supp. 2d at 475 (citing Sandoz Pharm. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 227 (3d Cir. 1990)). An action under the Lanham Act can be upheld even "where the advertisements are not literally false" as long as there is evidence of actual consumer confusion or deception. Eli Lilly and Co., 23 F.Supp.2d at 475 (citing Sandoz, 902 F.2d at 228-29). Section 43(a) of the Lanham Act prohibits actions such as trademark infringement which deceive consumers and impair a producer's goodwill. Dastar Corp. v. Twentieth Century Fox Film Corp., et al., 539 U.S. 23 (2003).

### 1. False Designation of Origin 15 U.S.C. §1125(a)(1)(A)

To establish a prima facie case of unfair competition and false designation of origin under §43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) a plaintiff must prove the following:

>   (1) Use of a word, term, name, symbol, devise or false designation of origin;
>   (2) in interstate commerce;
>   (3) in connection with goods or services;
>   (4) which is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of defendant's goods or services by another person; and
>   (5) likelihood of damage to the plaintiff.

Trade Media Holdings Ltd. v. Huang & Assoc.,123 F. Supp.2d 233, 242 (D.N.J. 2000).

7

i. Prior Use:

The Ninth Circuit recognized that in order to obtain ownership of a trademark it is not enough to be the first to invent the mark or register the mark; the party claiming ownership of the mark must have been the first to actually use the mark in commerce. Sengoku Works Ltd. v. RMC Int'l Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). Federal registration of a mark will serve as prima facie evidence that the registrant is the proper owner of the mark. The non-registrant may rebut the presumption of ownership, however, by showing that the non-registrant has used the mark in commerce first. Id. at 1220. This case has been offered by the Plaintiff to support its position.(Plaintiff's Opp'n. Br. 11).  The Third Circuit however, has yet to adopt this view. Thus, the principles established in Sengoku are merely persuasive and not binding upon this Court.

Using a domain name to operate a website will be considered a use in commerce as it affects a plaintiff's ability to offer its services. Trade Media Holdings Ltd., 123 F.Supp.2d at 242 (D.N.J. 2000).

### 2. False Advertising 15 U.S.C. §1125(a)(1)(B)

In order to establish that false advertising has occurred a plaintiff must show that "the commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers." Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., 292 F.Supp.2d 594, 598 (D.N.J. 2003). To determine whether an advertisement or product name is literally false, the court must first determine the unambiguous claims made by the advertisement, and then determine whether such claims are in fact false. Id. at 598. Only an unambiguous message can be literally false. Where the message is susceptible to more than one

meaning, the plaintiff's literal falsity claim will fail. If literal falsity cannot be proven, a plaintiff may still prevail if he or she can prove that the commercial makes a false or misleading claim and that a substantial number of consumers understand the ad as such. Id. at 599.

As stated in Evco Technology & Development Co., LLC, v. Buck Knives Inc., et al., Civ. No. 05-CV-6198, 2006 WL 277342 (E.D.Pa. Sept. 22, 2006), the Third Circuit has never addressed the issue of whether Rule 9(b) applies to claims brought under the Lanham Act but three decisions within this district have provided some guidance on the issue. In Max Daetwyler Corp. v. Input Graphics, Inc., 608 F. Supp. 1549 (E.D.Pa. 1985), the Court created an intermediate pleading standard in a Lanham Act false-advertising action. The intermediate pleading standard requires that in litigation in which one party is charged with making false statements, it is critical that the party charged is provided with sufficiently detailed allegations to allow him to prepare a proper defense. The intermediate pleading standard, however, is not binding on this Court and is simply persuasive. Both Gallup, Inc., v. Talentpoint, Inc., Civ. No. 00-5523, 2001 WL 1450592 (E.D.Pa. Nov. 13, 2001) and H.H. Fluorescent Parts, Inc., v. DM Technology & Energy Inc., No. 04-CV-1997, 2005 WL 2972986 (E.D.Pa. Nov. 3, 2005) adopt the intermediate pleading standard from Max Daetwyler Corp.

### 3. NJ Fair Trade Act

When assessing N.J.S.A. 56:4-1; 56:3-13.16(a); and 56:3-13.20, New Jersey courts will apply a single analysis based on both federal and state law. N.J.S.A. 56:4-1 provides: "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trademark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."

In <u>First Fidelity Bancorporation v. First Fidelity Capital Corp.</u>, 723 F.Supp. 246, 250 (D.N.J. 1989), the Court determined that where a plaintiff has established prior use of the service mark, that plaintiff could not have misappropriated defendant's earlier service mark as anticipated by <u>N.J.S.A.</u> 56:4-1. "The Third Circuit has observed that the federal law of unprivileged imitation under §43(a) of the Lanham Act is equivalent to the New Jersey law of unprivileged imitation under both <u>N.J. Stat. Ann. §56:4-1</u> and the New Jersey common law." <u>Eli Lilly & Co.</u>, 23 F.Supp.2d at 495 (citing <u>Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc.</u>, 747 F.2d 844, 854 (3d Cir. 1984)). The remaining two New Jersey Fair Trade Act claims <u>N.J.S.A.</u> 56:3-13.16(a) and <u>N.J.S.A.</u> 56:3-13.20 have been held by the Court as the statutory equivalent of the Lanham Act and may be analyzed accordingly. <u>Eli Lilly & Co.</u>, 23 F.Supp.2d at 495.

### 4. Cybersquatting Under the Lanham Act §43(d), 15 U.S.C. §1125(d)

Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d) states:

> **(1)(A)** A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person–
>
> **(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> **(ii)** registers, traffics in, or uses a domain name that--
>
> > **(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > **(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > **(III)** is a trademark, word, or name protected by reason of <u>section 706 of Title 18</u> or <u>section 220506 of Title 36</u>.

The statute requires that there be both a bad faith intent on the part of the defendant and that the mark be either distinctive at the time of registration or the mark be famous at the time of

registration of the domain name.

### 5. Unjust Enrichment

In New Jersey, the tort of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. Eli Lilly & Co., 23 F.Supp.2d 460, 496 (D.N.J. 1998). To succeed on a claim of unjust enrichment the plaintiff must "show both that defendant received a benefit and that retention of that benefit without payment would be unjust." Caputo v. Nice-Pak Products, Inc., 693 A.2d 494, 498 (N.J. Super App. Div. 1997).

### III. DISCUSSION

A. LANHAM ACT 15 U.S.C. §1125

#### 1. False Designation of Origin 15 U.S.C. §1125(a)(1)(A)

i. Prior Use:

Plaintiff asserts that Defendants never used "Edison Nissan" or "Nissan of Edison" in connection with their business, nor as a service mark in the advertising or promotion of their auto dealership services. (Compl. ¶28). Plaintiffs do acknowledge that the domain names at issue here were purchased and registered by Defendants on October 19, 2010. However, Plaintiffs contend that Defendants did not begin using the two domain names until on or about the time of Edison Nissan's opening on November 1, 2011. (Id. at ¶38). Edison Nissan registered "Edison Nissan" with the State of New Jersey on March 31, 2011, in order to conduct an auto dealership under the name Edison Nissan. Plaintiff also registered "Nissan of Edison" as an alternate name with the State of New Jersey on November 4, 2011. (Id. at ¶19). Edison Nissan used "Edison Nissan" as a service mark as early as November 1, 2011. (Id. at ¶20). Defendants argue that they were in fact,

11

the first user. (Def. Br. in Support 3,4).

The Court agrees with Plaintiff's argument that mere registration of a domain name with the intent to use it commercially does not establish "use" of the designation as a mark or establish priority over a rival. <u>Brookfield Communications Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1052 (9 Cir. 1990)[4]. Rather, it is the party that is first to operate, trade, or provide services using a designation as a mark that is the owner and the senior user, and who is immediately entitled to protection under the Lanham Act. <u>Sengoku Works Ltd. v. RMC Intern., Ltd.</u>, 96 F.3d 1217, 1219 (9 Cir. 1996).

Therefore, Defendants were not the prior users of the two domain names. Defendants were the first to register the domain names but not the first to use the domain names in commerce.

ii. <u>Domain Names</u>:

Defendants claim that Plaintiff cannot state a false designation of origin claim under the Lanham Act §43(a)(1)(A), 15 U.S.C. §1125(a)(1)(A) for intangible goods such as the domain names. Defendants rely on <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 37 (2003), to support this assertion. The <u>Dastar</u> case is distinct from the present case. <u>Dastar</u> involved a false designation of authorship of a work, which had passed into the public domain. In that case there was a conflict between the Lanham Act and the Copyright Act. In order to prevent a conflict between the two statutes the United States Supreme Court found that the Lanham Act does not prevent the unaccredited copying of an uncopyrighted work. <u>Id</u>. at 38. In the present

---

[4]While the Third Circuit has not fully developed this body of law, the Ninth Circuit is frequently looked to for trademark cases, and thus is persuasive to this Court.

case, the Plaintiff is not attempting to protect an authorship, but to protect its goods and services in interstate commerce. The Dastar interpretation of the Lanham Act specifically bars false designation of origin claims where "origin" is predicated on authorship of an original work instead of the physical origin of the product. Id. Defendants therefore misapply Dastar and domain names can be included in false designation of origin claims.

### 2. False Advertising 15 U.S.C. §1125(a)(1)(B)

Defendants claim that this case is analogous to Eli Lilly 23 F. Supp at 479, where the court found that plaintiff's conclusory allegations against defendants for false advertising failed to state a claim under the Lanham Act. Plaintiff asserts that Eli Lilly is distinct from the case at bar for two critical reasons. First, Plaintiff's Verified Complaint relies only on Defendants' violation of the Lanham Act and no other statute, whereas in Eli Lilly the plaintiff relied on both the FDCA and the Lanham Act. (Plaintiff's Opp'n. Br. 18). Second, in paragraph twenty-nine of the Verified Complaint, Plaintiff provides specific allegations of Defendants' unlawful conduct via the use of Plaintiff's trade name and mark in the domain names in order to promote Defendants' dealership. (Compl. ¶29). Based on the specific allegations in the Verified Complaint, Defendants are provided the opportunity to construct a proper defense. Furthermore, it is quite possible here that the prospective users of Plaintiff's services who mistakenly access Defendants' web site may fail to continue to search for Plaintiff's own home page, as a result of anger, frustration, or the belief that the Plaintiff's home page does not exist. Trade Media Holdings Ltd., 123 F.Supp.2d 233, 242 (D.N.J. 2000). Accordingly, Plaintiff has stated a plausible claim that Defendants have engaged in false advertising, meeting the standard established by Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

### 3. New Jersey Fair Trade Act

Plaintiff alleges that Defendants have acted in violation of the New Jersey Fair Trade Act. (Compl. ¶¶ 56, 57, 58). Defendants contend that they have not violated the New Jersey Fair Trade Act on the basis that Defendants were the first to use the name. Defendants specifically point to paragraphs twenty-six and twenty-seven of the Verified Complaint to support their position that "the allegations of the Complaint establish the Defendants' prior use of the Domain Names." (Def. Br. in Support 10). In the Verified Complaint, paragraphs twenty-six and twenty-seven establish the dates on which Defendants purchased and registered the domain names. However, for reasons stated *supra*, these dates fail to establish the Defendants' use of the domain names in commerce. Furthermore, paragraph thirty-eight states that Defendants did not begin using the two domain names until November 1, 2011. Based on Defendants' assertions, it appears that Defendants have equated buying and registering the domain names with using the domain names in commerce. The two are not synonymous and the facts here support Plaintiff's claim that Defendants were not the prior users of the two domain names. Given Plaintiff's detailed Verified Complaint, it appears that Plaintiff has surpassed the standard established in Accordingly, Plaintiff has stated a plausible claim meeting the standard established by Iqbal.

### 4. Cybersquatting Under the Lanham Act §43(d), 15 U.S.C. §1125(d)

Plaintiff contends that the "Edison Nissan" mark is a distinctive mark which is entitled to protection. (Compl. ¶63). Plaintiff asserts that the "Nissan" mark on its own is distinctive and "could not be used by any entity without appropriate authorization." (Pl. Opp'n.

Br. 20). Defendants state that Plaintiff fails to allege bad faith by Defendants or that Plaintiff's "mark" was distinctive at the time Defendants registered the domain names. (Def. Br. in Support 12). The Verified Complaint at paragraph sixty-three and sixty-five alleges bad faith on the part of Defendants, and that "Edison Nissan" is a distinctive mark. The Verified Complaint alleges that Defendants intended to trade on Edison Nissan's reputation and cause dilution of the mark with the bad faith intention to profit from the mark. While it is possible that Defendants registered the domain names with the bona fide intent to use them in commerce, they failed to use them until November 1, 2011, after the Edison dealership had been awarded to Plaintiff.

Therefore, it appears that the Nissan mark was distinctive at the time of domain name registration and that Defendants acted with the intent to profit from the mark's reputation.

### 5. Unjust Enrichment

In determining whether unjust enrichment has occurred the Court will determine whether the Defendants have incurred benefit which results in harm to the Plaintiff. Eli Lilly & Co., 23 F.Supp.2d at 496. Defendants assert that Plaintiff only makes conclusory statements claiming unjust enrichment. (Def. Br. in Support 12).  Plaintiff argues that Defendants received the benefit of advertising and sales that they would not otherwise have acquired resulting from redirecting Internet users to their website in bad faith. (Pl. Opp'n. Br. 22). Plaintiff also claims that Defendants have been unjustly enriched by the advertising expenditures and the intangible good will developed by Edison Nissan. (Id.). It would seem plausible, based on the facts pled, that Defendants benefitted from increased business resulting from the use of these domain names at the expense of Plaintiff.

## IV. CONCLUSION

        For the foregoing reasons, Defendant's Motion to Dismiss the Complaint is **denied.**

An appropriate Order accompanies this Opinion.

                                                                                S/ Dennis M. Cavanaugh
                                                                    Dennis M. Cavanaugh, U.S.D.J.

Date:       October  19 . 2012
Original:  Clerk
cc:         Hon. Mark Falk, U.S.M.J.
             All Counsel of Record
             File